## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS & ST. JOHN

William O. Perkins, III,

        Plaintiff,

    v.

The United States Virgin Islands, et. al.,

        Defendants.

Civil Action No. 3:17-cv-25

---

## PLAINTIFF BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

Alex Golubitsky
USVI Bar No. 1269
MARJORIE RAWLS ROBERTS, P.C.
PO Box 6347
St. Thomas, VI 00804
206.271.7417 (O)
866.301.2038 (F)
alex@mrrpc.net

Joseph A. DiRuzzo, III
USVI Bar No. 1114
JOSEPH A. DiRUZZO, III, P.A.
633 SE 3rd Ave., Suite 301
Ft. Lauderdale, FL 33301
954.615.1676 (O)
954.764.7272 (F)
jd@diruzzolaw.com

*Attorneys for the Plaintiff*

Dated: June 7, 2018

## TABLE OF CONTENTS

TABLE OF CONTENTS..........................................................................................................i

TABLE OF AUTHORITIES ...............................................................................................ii

GLOSSARY .........................................................................................................................i

I.     INTRODUCTION ........................................................................................................ 1

II.    SUMMARY JUDGMENT STANDARD....................................................................... 5

III.   ARGUMENT ............................................................................................................... 6

   A.    THE DEFENDANTS HAVE ADMITTED THAT THE PLAINTIFF'S INCOME TAX RETURN IS CORRECT AS FILED. ........................................................................ 6

   B.    THE USVI IS REQUIRED TO PAY INCOME TAX REFUNDS CLAIMED ON ORIGINAL TAX RETURNS FILED WITH THE BIR UNLESS THE BIR HAS ISSUED A NOTICE OF DEFICIENCY REGARDING SUCH RETURNS. ........................ 7

   C.    PLAINTIFF IS ENTITLED TO CLAIM THE RTPARK CREDIT............................. 10

   D.    BOTH THE MASTER FUND AND BMHVI ARE TEFRA PARTNERSHIPS AND ANY ASSESSMENTS RELATING TO THE SOURCE OF BMHVI'S INCOME, OR ANY ASSESSMENTS RELATING TO THE MASTER FUND'S INCOME, MUST BE ASSESSED AT THE PARTNERSHIP LEVEL BEFORE PLAINTIFF'S 2015 INCOME TAX RETURN MAY BE ADJUSTED. ........................................................................................... 13

      D.1 Both the Master Fund and BMHVI are TEFRA Partnerships. ...................................... 13

      D.2 The Source of Income is a Partnership Item. ................................................................. 14

      D.3 This Court is not Permitted to Make an Adjustment to the Plaintiff's 2015 Income Tax Return With Respect to Partnership Items unless an Appropriate Corresponding Adjustment has been Made to BMHVI's Partnership Return. ................................................................. 15

   E.    IF THE PLAINTIFF'S DISTRIBUTIVE SHARE OF BMHVI'S INCOME INCLUDES UNITED STATES SOURCE INCOME, OR INCOME EFFECTIVELY CONNECTED WITH A UNITED STATES TRADE OR BUSINESS, THE IRS MUST MAKE THAT ASSESSMENT AGAINST BMHVI. .......................................................................... 16

   F.    THERE IS NO LEGITIMATE FACTUAL DISPUTE THAT THE PLAINTIFF'S INCOME FROM HIS DISTRIBUTIVE SHARE OF BMHVI PROFITS IS SOURCED TO THE USVI ...................................................................................................... 17

      F.1. Income Sourcing Rules in the USVI. ......................................................................... 18

      F.2 Plaintiff's Residence Determines the Source of his Income from the Deemed Sale of Capital Assets.......................................................................................................... 19

IV.    CONCLUSION............................................................................................................ 20

i

# <u>TABLE OF AUTHORITIES</u>

***Cases***

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986) ........................................................... 5

<u>Bizcap, Inc. v. Olive</u>, 892 F.2d 1163, 1165 (3d Cir.1989) ............................................................ 8

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) ................................................................ 5, 6

<u>Chase Manhattan Bank, NA. v. Gov't of the Virgin Islands</u>, 300 F.3d 320, 322, 44 V.I. 457 (3d
Cir.2002) ................................................................................................................................. 8

<u>Clearwater Consulting Concepts, LLLP v. United States</u>, No. 2007-33, 2008 U.S. Dist. LEXIS
55691, at *17, 102 A.F.T.R.2d (RIA) 5307 (D.V.I. July 22, 2008) ........................................ 16

<u>Cooper v. C.I.R.</u>, 718 F.3d 216, 219 (3d Cir. 2013) ..................................................................... 7

<u>Danielson v. Innovative Commc'ns</u>, Corp., No. 2003-26, 2008 U.S. Dist. LEXIS 48163, at *17
(D.V.I. June 24, 2008) .......................................................................................................... 12

<u>Estate of Michael by Michael v. Lullo</u>, 173 F.3d 503, 509 (4th Cir. 1999) .................................. 9

<u>Hmw Indus. v. Wheatley</u>, 368 F. Supp. 915, 919-20 (D.V.I. 1973) ............................................ 11

<u>Komlo v. United States</u> 657 Fed. App'x 85, 87 (3d Cir. 2016) .................................................... 8

<u>Meyer v. Riegel Prods. Corp.</u>, 720 F.2d 303, 307 n.2 (3d Cir. 1983) ........................................... 5

<u>Paeste v. Gov't of Guam</u>, 798 F.3d 1228, 1241 (9th Cir. 2015) .................................................... 8

<u>Sanchez v. Innovative Tel. Corp.</u>, No. 2005-45, 2007 U.S. Dist. LEXIS 93255, at *5 (D.V.I. Nov.
30, 2007) ............................................................................................................................... 12

<u>Stallworth Timber Co. v. Triad Bldg. Supply</u>, 968 F. Supp. 279, 282 (D.V.I. 1997) ................. 12

***Virgin Islands Statutes***

17 V.I.C. § 483 .......................................................................................................................... 13

17 V.I.C. § 487A ....................................................................................................................... 13

17 V.I.C. § 806 ........................................................................................................... 11

33 V.I.C. § 681 ........................................................................................................... 17

***Federal Statutes***

26 U.S.C. § 1256 ............................................................................................... 17, 18, 19

26 U.S.C. § 6031 ..................................................................................................... 15, 16

26 U.S.C. § 6201 ............................................................................................................. 9

26 U.S.C. § 6211 ............................................................................................................. 9

26 U.S.C. § 6213 ............................................................................................................. 9

26 U.S.C. § 6215 ............................................................................................................. 9

26 U.S.C. § 6221 ........................................................................................................... 15

26 U.S.C. § 6222 ........................................................................................................... 15

26 U.S.C. § 6225 ................................................................................................. i, 15, 16

26 U.S.C. § 6231 ........................................................................................................... 13

26 U.S.C. § 6532 ............................................................................................................. 8

26 U.S.C. § 702 ............................................................................................................... 5

26 U.S.C. § 7422 ........................................................................................................ 2, 8

26 U.S.C. § 7602 ........................................................................................................... 10

26 U.S.C. § 7654 ........................................................................................................... 18

26 U.S.C. § 7701 ..................................................................................................... 14, 16

26 U.S.C. § 865 ....................................................................................................... 19, 20

26 U.S.C. § 932 ........................................................................................................ 2, 18

26 U.S.C. § 934 ............................................................................................................... 3

48 U.S.C. § 1397 ........................................................................................................ 1, 8

iii

48 U.S.C. § 1612 ..................................................................................................... 2, 9

***Federal Regulations***

26 C.F.R. § 301.7701-2 ................................................................................................ 13

26 C.F.R. § 1.6031-1 .................................................................................................... 15

26 C.F.R. § 1.937-2 ........................................................................................... 18, 19, 20

26 C.F.R. § 301.6231(a)(3)-1 ....................................................................................... 15

26 C.F.R. § 3016231(a)(3)-1 ........................................................................................ 15

26 C.F.R. § 301.6402-3 .................................................................................................. 8

***Federal Rules***

Fed. R. Civ. P. 30(b)(6) ................................................................................................ 15

Fed. R. Civ. P. 36 ...................................................................................................... 6, 7

Fed. R. Civ. P. 56 .......................................................................................................... 5

***Local Rules***

LR 71A.1 ........................................................................................................................ 9

***Other Authorities***

P.L. 97-248 ................................................................................................................ i, 13

Rev. Proc. 84-35 .......................................................................................................... 14

**GLOSSARY**

| | |
|---|---|
| Code | Internal Revenue Code (Title 26 of the United States Code) |
| Mirror Code | Internal Revenue Code made applicable to the USVI by operation of 48 U.S.C. § 1397 |
| BIR | Virgin Islands Bureau of Internal Revenue |
| IRS | Internal Revenue Service |
| NOD | Notice of Deficiency (see 26 U.S.C. § 6212). |
| SoF | Statement of (material) Facts (for which there is no genuine dispute) |
| RTPark | University of the Virgin Islands Research and Technology Park |
| BMHVI | Brisa Max Holdings VI, LLC |
| SCA | Skylar Capital Advisors, LP |
| Master Fund | Skylar Capital Energy Global Master Fund, Ltd. |
| Master Fund LPA | Master Fund Limited Partnership Agreement |
| RTPark Credit | Income tax credit under 26 U.S.C. § 934 and 17 V.I.C. § 806(f) for RTPark tenants |
| PTA | Park Tenant Agreement |
| TEFRA | The Tax Equity and Fiscal Responsibility Act of 1982, P.L. 97-248 |
| FPAA | Final Partnership Administrative Adjustment (see 26 U.S.C. § 6225; 26 U.S.C. § 6226) |
| Section 1256 Contracts | Regulated futures contracts, foreign currency contracts, nonequity options, dealer equity options, and dealer securities futures contracts |

i

**COMES NOW**, William O. Perkins, III ("Plaintiff"), through counsel, in support of Plaintiff's Motion for Summary Judgment and pursuant to Local Rule 56.1(a)(1) and hereby offers the following brief in support of Plaintiff's Motion for Summary Judgment.

## I.      INTRODUCTION

This case is a simple suit for an income tax refund, as permitted under the Internal Revenue Code of 1986, as amended (the "Code") as mirrored to the United States Virgin Islands ("the USVI" and the "Mirror Code"). Plaintiff is entitled to judgment as a matter of law in this case, largely for the same reasons that this Court ordered (see ECF # 78) that the Defendants' Motion to Dismiss the Plaintiff's First Amended Complaint (the "First Amended Complaint" or the "Complaint") be denied. The Defendants have not, in any serious fashion, mounted a defense in respect of Plaintiff's Complaint; they have simply continued to hew to their initial theory in this case, already rejected by this Court, that by initiating an audit of Plaintiff, they are forever discharged from their responsibility to pay the Plaintiff what he is owed as an income tax refund. For the reasons discussed herein, this is not the law, and the Plaintiff is entitled to judgment as a matter of law on his Complaint.

The only defense offered by the Defendants in this matter is that the Plaintiff's Income Tax Return for the tax year ending December 31, 2015 (the Plaintiff's "2015 Income Tax Return" and the Plaintiff's "2015 Tax Year") is under audit. However, as this Court found in its order denying the Defendant's Motion to Dismiss, there is no law that prevents the Plaintiff from seeking and obtaining an income tax refund merely because the Plaintiff is being audited by the Virgin Islands Bureau of Internal Revenue (the "BIR"). Under the Mirror Code,[1] the Plaintiff is required to pay

---

[1] The "Mirror Code" references the system of income taxation in the USVI created by the Naval Services Appropriation Act. 48 U.S.C. § 1397. The details of the Mirror Code system of taxation are laid in Section III.B, below.

tax on his worldwide income to the BIR. 26 U.S.C. § 932(c). Unlike the Internal Revenue Service (the "IRS"), which maintains a robust system of paying income tax refunds when due, or issuing a Notice of Deficiency (an "NOD") if a refund is wrongfully claimed, the USVI and the BIR generally lack the funds to pay income tax refunds as they become owed by the Defendants. Statement of Fact ("SoF") ¶ 50.

As a result, there are few, if any, analogous cases to this one under United States law. The genesis of this case relates to this distinction. A tax refund owed by the IRS will be paid unless there is an error on a return that leads to a NOD being issued. However, the timing of tax refunds have, heretofore, been entirely at the whim of the Defendants; while there is a rough hierarchy of government obligations that payment of tax refunds factors into (towards the bottom), there are no published or stated criteria for determining when the Defendants will issue tax refunds. SoF ¶ 51. The conduct of the Defendants in this case indicates that the Defendants believe that this practice of paying income tax refunds whenever they feel like it is the law of the land. It is not.

The Plaintiff is unaware of any case in the United States where a judgment has been rendered against the federal government for an income tax refund except when there was a *bona fide* dispute over the amount of a refund owed, and the case was required to be resolved by a court of competent jurisdiction on the merits. However, as laid out in greater detail in Section III.B, below, the Plaintiff does have a right to a judgment against the Defendants for an unpaid tax refund. Specifically, 26 U.S.C. § 7422 (read in conjunction with 48 U.S.C. § 1612) creates a private right of action under the Mirror Code in this Court for the Plaintiff to recover taxes erroneously collected. The Plaintiff now seeks the judgment which is his right in the instant motion.

The Defendants have consistently maintained in this case that the BIR's decision to audit the Plaintiff should prevent this case from moving forward. However, Director Marvin Pickering

initiated the audit of the Plaintiff because he received an offer to resolve this case. SoF ¶ 52. Until

the Director was aware of this case, the BIR did not attempt to audit the Plaintiff. The Plaintiff was

informed of this decision on July 11, 2017. SoF ¶ 53. Tellingly, on July 14, 2017, three days after

this audit was announced, the Defendants had no funds available to pay income tax refunds. SoF

¶ 54. The intervening eleven months have been a scramble for the Defendants where they have

alternately refused to participate in the discovery process in this case and tried to figure out some

justification for failing to pay the Plaintiff the money he is owed. They have failed to find such

reason.

The Defendants have admitted that each item on the Plaintiff's 2015 Income Tax Return is

correct as filed. SoF ¶¶ 45, 49. The Defendants, while not specifically indicating an incorrect entry

on the Plaintiff's 2015 Income Tax Return, state that the Plaintiff has taken a tax credit under 26

U.S.C. § 934(b) against income not sourced to the USVI. SoF ¶ 12. The Defendants have alleged

no facts in support of this claim. The BIR has not issued a NOD with respect to the Plaintiff's 2015

Tax Year, meaning that the BIR must pay the income tax refund claimed on the Plaintiff's 2015

Income Tax Return.  SoF ¶ 6.

Plaintiff relocated to the USVI at the beginning of 2014 to take advantage of the income

tax credits offered by the University of the Virgin Islands Research and Technology Park (the

"RTPark"). SoF ¶ 3. Brisa Max Holdings VI, LLC ("BMHVI") is a limited liability company

which was formed in the USVI on February 28, 2014. SoF ¶ 15. BMVHI is tenant of the RTPark.

SoF ¶ 18. BMVHI is a partnership for income tax purposes. SoF ¶ 25. Plaintiff is the sole Class A

Member of BMHVI, and Plaintiff controls BMHVI. SoF ¶ 16. BMHVI is engaged in the business

of investment advisory and consulting services in various sectors including energy futures trading.

3

SoF ¶ 22. Plaintiff is solely responsible for BMHVI's investment advisory services related to energy futures trading activity. SoF ¶ 35.

BMHVI is the sole economic owner of Skylar Capital Advisors, LP ("SCA"), and therefore the only owner for income tax purposes. SoF ¶ 29. SCA is a USVI limited partnership organized in the USVI, and BMHVI owns the sole economic interest in SCA. SoF ¶¶ 29, 30. Therefore, SCA is a "disregarded entity" for income tax purposes as to BMHVI. 26 C.F.R. § 301.7701-3(b); see also 26 C.F.R. § 301.7701-3(c)(2). SCA is the sole general partner in the Skylar Capital Energy Global Master Fund, Ltd. (the "Master Fund"), which is a partnership. SoF ¶ 31. SCA is responsible for the investment advisory regarding the trading activity of the Master Fund and is entitled to an incentive profits allocation of Master Fund profit under the Master Fund Limited Partnership Agreement (the "Master Fund LPA"). *Id*. As SCA is a disregarded entity for income tax purposes, BMHVI, for income tax purposes, fulfills the role of the general partner for the Master Fund, and is responsible almost all of the investment advisory services for the energy futures trading on the Master Fund's behalf. SoF ¶ 32. The Plaintiff performs these trading functions on BMHVI's behalf, mostly from BMHVI's office in Red Hook or his home office in Waterpoint. SoF ¶¶ 35-37.

On October 17, 2016, the Plaintiff filed the 2015 Income Tax Return. The Plaintiff's 2015 Income Tax Return requested a refund of $5,171,975.00. SoF ¶ 1. Plaintiff's 2015 Income Tax Return reported an income tax liability of $6,017,206.00. *Id*. Plaintiff's 2015 Income Tax Return reported tax payments of $7,954,428.00 and an RTPark Credit of $3,234,753.00 (the "RTPark Credit"). *Id*. The tax payments to the USVI by the Plaintiff for the 2015 Tax Year consisted of a $754,428.00 overpayment from 2014 and $7,200,000 in tax deposits paid when the Plaintiff filed his "Automatic Application for Extension" for 2015 Income Tax Return. SoF ¶¶ 4, 7-8. The

4

Plaintiff was a *bona fide* resident of the USVI for the entirety of the 2015 Tax Year. SoF ¶ 2. The RTPark Credit was applied against the Plaintiff's distributive share[2] of activities he conducted on BMHVI's behalf for the Master Fund. SoF ¶ 14. This income is all USVI source income, and therefore the Defendants' conclusory allegations that the RTPark Credit was taken against non-USVI source income is incorrect and of no legal significance.

Therefore, the Plaintiff is entitled to judgment as a matter of law in the amount of $5,171,975.00, as claimed on his 2015 Income Tax Return, plus applicable interest and attorneys' fees.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it will "affect the outcome of the suit under the governing law." Id. When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of

---

[2] Distributive share is defined in 26 U.S.C. § 702. A partner's distributive share of a partnership item of income, credit, gain, loss, or deduction refers to that partner's allocable portion of the given partnership item.

an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

For the reasons set out below, there is no genuine dispute over a material issue of fact, and therefore summary judgment should be granted in the Plaintiff's favor.

**III.   ARGUMENT**

        *A. THE DEFENDANTS HAVE ADMITTED THAT THE PLAINTIFF'S INCOME TAX RETURN IS CORRECT AS FILED.*

Requests for Admission, if not denied, are deemed admitted. Fed. R. Civ. P. 36(a)(3). The Plaintiff served his Second Request for Admissions on the Defendants on December 15, 2017 (the "Second Request" or the "Second Request for Admissions"). On January 12, 2018, the Defendants responded to the Plaintiff's Second Request stating that the Defendants lacked sufficient information to respond to the Second Request. SoF ¶ 46. The Plaintiff raised the issue to the Defendants that these responses were insufficient, and sent a letter to the Defendants on January 29, 2018 stating the same. SoF ¶ 47. On February 21, 2018, the Defendants agreed to provide a response to the Plaintiff's Second Request no later than February 28, 2018. *Id.*

On February 27, 2018, the Defendants requested that the Court extend the deadline to respond to the Second Request for Admissions, and the Court granted that relief. ECF # 85. On March 19, 2018, the Defendants asked for an additional extension of time to respond to the Plaintiff's Second Request for Admissions during the status conference held by the Court in this matter. SoF ¶ 47. The Court granted the Defendants' request and allowed the Defendants until May 15, 2018 to respond to the Plaintiff's Second Request. *Id.* During this status conference, Plaintiff's counsel inquired with the Court if the Plaintiff's Second Request would be deemed admitted if the Defendants did not comply with the May 15, 2018 deadline. SoF ¶ 49. The Court responded in the affirmative, stating that is what the rule says. Fed. R. Civ. P. 36(a)(3) states that

the effect of not timely responding to a request for admission is that the matter is deemed admitted. *Id*.

On May 14, 2018, the Defendants requested that the Plaintiff extend the period of response for the Second Request until May 18, 2018. SoF ¶ 48. The Plaintiff agreed to this brief extension. SoF ¶ 48. To date, no response to this request has been received. SoF ¶ 46. The Plaintiff requested, in his Second Request for Admissions, that the Defendants admit or deny whether each line of the Plaintiff's Income Tax Return is correct as filed. SoF ¶ 45. By failing to respond to the Plaintiff's Second Request for Admissions, the Defendants admitted that each request is correct. SoF ¶ 49; Fed. R. Civ. P. 36(a)(3). To date, the responses to the Plaintiff's Second Request for Admission have not been received. SoF ¶ 45. On May 30, 2018, the Defendants responded to the Plaintiff's First Request for Admissions, but did not respond to the Second Request for Admissions, despite the Plaintiff's explicit reference to this Second Request in his notice to the Court on May 21, 2018. ECF # 121.

Because the Defendants have admitted that the Plaintiff's Income Tax Return is correct as filed, this Court should enter a judgment in the Plaintiff's favor for the entirety of the refund owed to the Plaintiff.

### B. THE USVI IS REQUIRED TO PAY INCOME TAX REFUNDS CLAIMED ON ORIGINAL TAX RETURNS FILED WITH THE BIR UNLESS THE BIR HAS ISSUED A NOTICE OF DEFICIENCY REGARDING SUCH RETURNS.

This Court has set out much of the Plaintiff's argument in support of his Motion for Summary Judgment in the Court's order denying the Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. ECF # 78. This Court summarized the income tax law of the USVI as follows in its Order, by quoting <u>Cooper v. C.I.R.</u>, 718 F.3d 216, 219 (3d Cir. 2013):

> In the Naval Service Appropriation Act of 1922, Congress passed legislation applying the Internal Revenue Code of the United States to the Virgin Islands. See

Pub. L. 94-932 (codified at 48 U.S.C. § 1397); Chase Manhattan Bank, NA. v. Gov't of the Virgin Islands, 300 F.3d 320, 322, 44 V.I. 457 (3d Cir.2002). This legislation provides that "[t]he income-tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in the Virgin Islands of the United States, except that the proceeds of such taxes shall be paid into the treasuries of said islands." 48 U.S.C. § 1397. This statutory scheme has come to be known as the "mirror code" because Congress designed Virgin Islands tax law to mirror the tax laws in effect on the mainland. Chase Manhattan Bank, 300 F.3d at 322. As a result of this legislation, the words "Virgin Islands" are substituted for the words "United States" throughout the Internal Revenue Code. Bizcap, Inc. v. Olive, 892 F.2d 1163, 1165 (3d Cir.1989).

This Court reasoned that under 26 U.S.C. § 7422, as mirrored, the Plaintiff is permitted to bring a suit for refund six months after duly filing a claim for refund. ECF # 78, p. 7; 26 U.S.C. § 7422; Komlo v. United States 657 Fed. App'x 85, 87 (3d Cir. 2016). If a taxpayer has made excess tax payments, "a claim for credit or refund of such overpayment shall be made on the appropriate income tax return." 26 C.F.R. § 301.6402-3(a)(1), ECF # 78, p. 7. This Court found that the other requirement for bringing such a suit is that such a taxpayer must wait six months after filing his or her income tax return prior to filing a suit for refund under 26 U.S.C. § 7422. ECF # 78; 26 U.S.C. § 6532(a)(1). Finally, the Court held that "[a]s the Ninth Circuit has observed, [26 U.S.C. § 6532(a)(1)] is certainly indicative of Congress's expectation that six months is a sufficient period for administrative processing of a valid claim for a tax refund.'" ECF # 78, p. 8 (quoting Paeste v. Gov't of Guam, 798 F.3d 1228, 1241 (9th Cir. 2015)).

Paeste is an instructive case in this matter. Paeste addresses income tax refunds owed by Guam which, like the USVI, is an unincorporated territory of the United States that uses a Mirror Code as its tax system. For Mirror Code jurisdictions such as Guam and the USVI, the territory executive agency responsible for the collection of income taxes (in the case of the USVI, the BIR) functions in the role that the IRS takes in the Code. The Ninth Circuit noted in Paeste that a territorial government such as the USVI never had any legal claim to a tax overpayment. Paeste,

798 F.3d at 1241. The Ninth Circuit relied on a Fourth Circuit case, Estate of Michael by Michael v. Lullo, 173 F.3d 503, 509 (4th Cir. 1999), which held that "[i]f a tax payment is an overpayment, the IRS must refund it."

For the USVI to have a legal claim to payment of taxes, there must be an assessment of taxes against the taxpayer. Under 26 U.S.C. § 6201(a)(1), as mirrored, the BIR must assess all taxes shown on an individual's personal income tax return. The BIR may only assess a tax not listed on a return, if it follows the deficiency provisions of 26 U.S.C. § 6211, *et. seq.* 26 U.S.C. § 6201(e). Prior to assessing a deficiency, the BIR is required to send a NOD to a taxpayer in all instances except for assessments of mathematical or clerical errors. 26 U.S.C. § 6212(a). If the BIR issues a NOD, it must wait for ninety days after the NOD has been mailed prior to assessing the deficiency. 26 U.S.C. § 6213(a). If the taxpayer to whom the NOD is issued files a petition with this Court within that ninety-day period, the BIR is not permitted to assess the tax set out in the NOD until this Court enters a judgment against the taxpayer upholding the NOD. 26 U.S.C. § 6215(a); 48 U.S.C. § 1612; LR 71A.1.

Only if there is a mathematical or clerical error on a return, can the BIR assess a deficiency without issuing a NOD. 26 U.S.C. § 6213(b)(1). If the BIR wishes to assess a tax based on a mathematical or clerical error, it must only send notice to a taxpayer, and such notice is not a NOD, but is rather an assessment of the tax. Id. However, should a taxpayer contest such a notice in writing within sixty days of receiving the notice the BIR "shall" abate the assessment arising out of the mathematical or clerical adjustment. 26 U.S.C. § 6213(b)(2). Once such abatement has been requested by a taxpayer, the BIR may only assess a tax based on that mathematical or clerical error by issuing a NOD. Id.

9

On March 12, 2018, the BIR sent the Plaintiff a notice of a mathematical adjustment to his return. SoF ¶ 41. On March 26, 2018, within sixty days of the BIR's March 12, 2018 notice, the Plaintiff submitted a request for abatement of that mathematical adjustment. SoF ¶ 42. Therefore, the BIR was required to abate the assessment, and may only assess that tax again through the NOD procedures. The BIR has not issued a NOD to the Plaintiff in relation to the 2015 (or any other) tax year.  SoF ¶ 6.

The Defendants, throughout this case, have confused an audit with an assessment. The term "audit" is not defined anywhere in the Code. Rather, an audit is an administrative proceeding which is designed by the IRS, or, under the Mirror Code, the BIR. 26 U.S.C. § 7602, as mirrored, allows the BIR to issue administrative summons to investigate a taxpayer's tax liability.

Therefore, the only tax which may be assessed by the BIR is the tax listed on Plaintiff's 2015 Income Tax Return. As such, the Defendants have no legal claim to the $5,171,975.00 refund listed on the Plaintiff's 2015 Income Tax Return, and Plaintiff is entitled to a judgment for the same, plus interest and attorneys' fees, as a matter of law.

### C.  PLAINTIFF IS ENTITLED TO CLAIM THE RTPARK CREDIT.

BMHVI is a tenant of the RTPark, having contracted with the RTPark those rights as evidenced in the Park Tenant Agreement dated December 8, 2014, with an effective date of February 28, 2014 (the "PTA"). Section 4.02 of the PTA states that BMHVI "will receive USVI Tax Incentives only for its Business conducted as a Park Tenant and Protected Cell." SoF ¶ 18 (within exhibit). Section 1.05 of the PTA describes the business for which BMHVI receives its incentives is as a technology and energy consulting services firm. BMHVI's business, as conducted as the sole owner of SCA, is to perform investment advisory services for the trading of

10

energy futures contracts. SoF ¶ 22. This type of business is clearly covered by the PTA. By virtue of the PTA, BMHVI is a protected cell of the RTPark.

Section 4.05 of the PTA authorized Approved Owners of BMHVI to claim USVI Tax Incentives. SoF ¶ 21 (within exhibit). Section 1.04 of the PTA identifies Perkins as an Approved Owner. *Id*. The RTPark has never notified BMHVI that it is in breach of the PTA, and the Defendants do not allege that BMHVI was ever in breach of the PTA. SoF ¶ 19. Therefore. BMHVI, and its Approved Owners, were entitled to claim RTPark benefits in 2015.

17 V.I.C. § 806(f) provides that partners who are *bona fide* residents of the USVI who directly or indirectly own an interest in a company with a PTA, such as BMHVI, "shall be entitled to a ninety percent (90%) reduction on income taxes payable with respect to income derived from the dividends or distributions paid to them by the Research and Technology Park Protected Cell Corporation or a Protected Cell". The tax incentive operates as a matter of statute and contract, and there is no predicate requirement that an entity receive a compliance certificate of any type prior to a partner claiming the tax incentive guaranteed by contract.

This Court, in describing USVI tax incentives generally, has held that the grant of such incentives is "in the nature of a contract" between a taxpayer receiving benefits and the USVI. Hmw Indus. v. Wheatley, 368 F. Supp. 915, 919-20 (D.V.I. 1973), aff'd HMW Indus. v. Wheatley, 504 F.2d 146 (3d Cir. 1974). Such grants of tax incentives are "firm commitments" by the USVI, and the failure to abide by the terms of such contracts "would do immeasurable harm to the economy of the territory and render uncertain indeed its prospects of attracting any additional investment." Id.

The Plaintiff is guaranteed the benefit of the PTA under both the relevant statute and by the terms of the PTA itself. He is, at minimum, an intended third-party beneficiary of the PTA.

11

This Court, relying on the Restatement of Contracts has held that if "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance" to a third party, that third party is an intended third party beneficiary. Sanchez v. Innovative Tel. Corp., No. 2005-45, 2007 U.S. Dist. LEXIS 93255, at *5 (D.V.I. Nov. 30, 2007). In this instance, the Plaintiff is named as a person who is intended to receive the benefit of the PTA in the PTA. SoF ¶ 21.  This Court has held specifically in the context of an Economic Development Certificate that a person identified as an individual to receive such benefits is an intended third beneficiary of such a contract who may enforce any rights under that contract. Danielson v. Innovative Commc'ns, Corp., No. 2003-26, 2008 U.S. Dist. LEXIS 48163, at *17 (D.V.I. June 24, 2008).

The RTPark has bound the USVI to provide tax benefits to the Plaintiff. Therefore, the USVI has a duty to provide those benefits to the Plaintiff. In order for the USVI to be excused from performing such duties, the Plaintiff or BMHVI must not only breach the contract, but such breach must be *material* and *uncured*. Stallworth Timber Co. v. Triad Bldg. Supply, 968 F. Supp. 279, 282 (D.V.I. 1997). In this case, the Defendants have affirmatively stated that they do not allege that the PTA has been breached. SoF ¶ 19. Therefore, the USVI has an affirmative duty to allow the Plaintiff the tax benefits he is owed under the PTA.

Plaintiff calculated this 90% credit on Statement 1a of his Income Tax Return. SoF ¶ 11. The Defendants have admitted that this Statement is correct. SoF ¶ 12. Therefore, the Plaintiff is entitled to claim the RTPark Credit.

//

//

//

//

### D. BOTH THE MASTER FUND AND BMHVI ARE TEFRA PARTNERSHIPS AND ANY ASSESSMENTS RELATING TO THE SOURCE OF BMHVI'S INCOME, OR ANY ASSESSMENTS RELATING TO THE MASTER FUND'S INCOME, MUST BE ASSESSED AT THE PARTNERSHIP LEVEL BEFORE PLAINTIFF'S 2015 INCOME TAX RETURN MAY BE ADJUSTED.

The Tax Equity and Fiscal Responsibility Act of 1982, P.L. 97-248 ("TEFRA") requires that certain adjustments to partnerships items must be made at the partnership level before they can be made against a partner in that partnership. To the extent that the Defendants intend to assess a tax against the Plaintiff based on an allegation that the Plaintiff's distributive share of BMHVI's income is not USVI sourced, such an assessment must first be made against BMHVI, or the Master Fund, in a TEFRA proceeding.

### D.1 Both the Master Fund and BMHVI are TEFRA Partnerships.

TEFRA applies only to "TEFRA partnerships". A TEFRA partnership is any partnership which is not a "small partnership." 26 U.S.C. § 6231(a)(1)(A). A small partnership is any partnership with ten or fewer partners and with only individuals, estates of deceased partners, and corporations taxed under Subchapter C of the Code as partners. 26 U.S.C. § 6231(a)(1)(B). Small partnerships may elect to have TEFRA apply, however, for all other partnerships, the provisions of TEFRA are mandatory. Id.

BMHVI had six partners in 2015: the Plaintiff, Kayla Bruzzese, Gerardo Balboa, Stephen Murphy, Omar Haneef, and the RTPark. SoF ¶ 15. The RTPark is "a body corporate and politic constituting a public corporation and autonomous governmental instrumentality of the Government of the Virgin Islands." 17 V.I.C. § 483. It is tax exempt by statute, 17 V.I.C. § 487A, and need not make an election to be treated as the same. 26 C.F.R. § 301.7701-2(b) defines corporations as, *inter alia*, business entities owned by a state government or political subdivision thereof. However, the USVI is not a state, which is defined as the fifty states plus the District of

Columbia. 26 U.S.C. § 7701(a). A corporation, for tax purposes, does not include a business entity owned by a territorial government. Because the RTPark is not a corporation taxable under Subchapter C for purposes of the Code, its ownership of BMHVI makes BMHVI ineligible to be a small partnership excepted from TEFRA.

Furthermore, Rev. Proc. 84-35, Sec. 3.03 states that only a partnership wherein "each partner's share of each partnership item is the same as such partner's share of every other item" may be a small partnership for TEFRA purposes. BMHVI does not meet this criterion, as its Class B Members are only entitled to distributions in the discretion of the Class A Member. SoF ¶ 16.

For these reasons, BMHVI is not a small partnership, and is therefore subject to TEFRA procedures. Likewise, the Master Fund's general partner (i.e. SCA) is a "disregarded entity," and its limited partner is a partnership. Therefore, it is not a small partnership and therefore subject to TEFRA. Thus, to the extent that the there is an allegation that the Master Fund's income is incorrectly sourced or reported, the IRS must issue a Final Partnership Administrative Adjustment ("FPAA")[3] to the Master Fund *prior* to the BIR being permitted to make any adjustment to the BMHVI Income Tax Return, and by extension the K-1 that the Plaintiff receives from BMHVI.

### D.2 The Source of Income is a Partnership Item.

The Defendants sole allegation of error on the Plaintiff's 2015 Income Tax Return is that the Plaintiff's income from his distributive share of BMHVI's income is not sourced to the USVI or effectively connected with a USVI trade or business. The Plaintiff reported his income from BMHVI as it appears on his Schedule K-1 from BMHVI as USVI source income, eligible for the RTPark Credit.

---

[3] An FPAA is similar to a statutory notice of deficiency except that it shows only the determined treatment of partnership items rather than a tax deficiency.  See 26 U.S.C. §§ 6225, 6226.

For Mirror Code purposes, BMHVI is a domestic partnership. Therefore, it is required to file an income tax return with the BIR each year, regardless of the source of its income. 26 C.F.R. § 1.6031-1(a). BIR Revenue Agent Sheryl Martin, designated as the Fed. R. Civ. P. 30(b)(6) corporate representative for the Defendants for all issues regarding the sourcing of income for BMHVI, acknowledged that this determination must be made at the partnership level. SoF ¶ 28. Additionally, Ms. Martin stated that BMHVI is not under audit, at all. SoF ¶¶ 28, 39. In addition to this admission from the Defendants, TEFRA dictates that the source of income is a partnership item. See 26 C.F.R. § 301.6231(a)(3)-1(b) ("The term 'partnership item' includes the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc."). Furthermore, whether (or not) income is eligible for a tax exemption (or a tax credit) is also a partnership item. 26 C.F.R. § 3016231(a)(3)-1(a)(1)(iv).

Therefore, the source of BMHVI's income and the eligibility of individual partners of BMHVI for an RTPark Credit with respect to their distributive share of BMHVI's income are partnership items, which cannot be adjusted unless BMHVI, or the Master Fund, has a partnership level adjustment first.

**D.3 This Court is not Permitted to Make an Adjustment to the Plaintiff's 2015 Income Tax Return With Respect to Partnership Items unless an Appropriate Corresponding Adjustment has been Made to BMHVI's Partnership Return.**

As a general rule, "the tax treatment of any partnership item… shall be determined at the partnership level." 26 U.S.C. § 6221. A partnership files an income tax return and reports the distributive share of each of the partnerships tax attributes to its partners. 26 U.S.C. § 6031. "A partner shall, on the partner's return, treat a partnership item in a manner which is consistent with the treatment of such partnership item on the partnership return." 26 U.S.C. § 6222(a). 26 U.S.C. § 6225 states that "no assessment of a deficiency attributable to any partnership item may be made

15

(and no levy or proceeding in any court for the collection of any such deficiency may be made, begun, or prosecuted) before…" the 150th day after a notice of final partnership administrative adjustment has been mailed to the tax matters partner or until a Court of competent jurisdiction has made a determination on a petition filed with respect to that FPAA.

No FPAA has been issued to BMHVI. SoF ¶ 43. Therefore, under 26 U.S.C. § 6225, there cannot be any assessment of a deficiency attributable to a partnership item of BMHVI on the Plaintiff's 2015 Income Tax Return. Similarly, no FPAA has been issued to the Master Fund (SoF ¶ 44), and therefore pursuant to 26 U.S.C. § 6225 there cannot be an adjustment of Master Fund income on the BMHVI Income Tax Return. Because the source of the Plaintiff's distributive share of BMHVI's income and that income's eligibility for the RTPark Credit are partnership items, see discussion, supra, this Court may not consider an adjustment based on those items in this proceeding.

### E. IF THE PLAINTIFF'S DISTRIBUTIVE SHARE OF BMVHI'S INCOME INCLUDES UNITED STATES SOURCE INCOME, OR INCOME EFFECTIVELY CONNECTED WITH A UNITED STATES TRADE OR BUSINESS, THE IRS MUST MAKE THAT ASSESSMENT AGAINST BMHVI.

BMHVI in a USVI Limited Liability Company, taxed as partnership. SoF ¶ 15. For United States income tax purposes, it is a foreign partnership. 26 U.S.C. § 7701(a). Therefore, BMHVI is required to file a Form 1065, Return of Partnership Income, with the IRS regarding all partnership income which is United States source or effectively connected with a United States trade or business. 26 U.S.C. § 6031(e)(2). This Court has explained that an USVI LLC, taxed as a partnership, with United States source income, or income effectively connected with a United States trade or business, must file a Form 1065 in the United States in addition to the USVI. Clearwater Consulting Concepts, LLLP v. United States, No. 2007-33, 2008 U.S. Dist. LEXIS 55691, at *17, 102 A.F.T.R.2d (RIA) 5307 (D.V.I. July 22, 2008), vacated on other grounds.

16

The BIR is charged with enforcing the tax laws of the USVI. 33 V.I.C. § 681. However, the BIR cannot enforce the income tax laws of the United States. Such enforcement falls to the IRS. Any foreign partnership, whether it is a TEFRA partnership or a small partnership, must file a Form 1065 with the IRS reporting its United States source income, or its income effectively connected with a United States trade or business. If BMHVI had United States source income, or income effectively connected with a United States trade or business (a point we do not concede), it would ultimately be the IRS's responsibility to make such an assessment.

Because the IRS has not made such an assessment, SoF ¶ 44, BMHVI does not have United States source income, or income effectively connected with a United States trade or business.

### F. THERE IS NO LEGITIMATE FACTUAL DISPUTE THAT THE PLAINTIFF'S INCOME FROM HIS DISTRIBUTIVE SHARE OF BMHVI PROFITS IS SOURCED TO THE USVI

Even if the Defendants had followed the proper procedure to begin an assessment of a tax against the Plaintiff because BMHVI had mischaracterized the source of its income, the Defendants cannot point to any facts which would legitimately support such a position, and therefore, there cannot be a genuine dispute as to the sourcing of the Plaintiff's distributive share of BMHVI income. The Plaintiff's distributive share of BMHVI's income during the 2015 Tax Year consists mostly of 26 U.S.C. § 1256 gains. SoF ¶¶ 32, 33. 26 U.S.C. § 1256 applies to regulated futures contracts, foreign currency contracts, nonequity options, dealer equity options, and dealer securities futures contracts (collectively, "Section 1256 Contracts"). BMHVI is the sole economic owner of SCA. SoF ¶ 29.  SCA is a disregarded entity as to BMHVI for income tax purposes. SoF ¶ 29.  SCA is the general partner in the Master Fund.  SoF ¶ 31. SCA is operated as a subsidiary of BMHVI (SoF ¶ 29),and operates out of BMVHI's Red Hook office (SoF ¶ 26). The

Master Fund is a Cayman Islands partnership which has no office or other fixed place of business (SoF ¶ 33).

The Master Fund owns Section 1256 Contracts, specifically, energy futures contracts. SoF ¶¶ 32, 33. Section 1256 contracts are marked-to-market on a yearly basis, meaning that each contract is "treated as sold for its fair market value on the last business day of such taxable year." 26 U.S.C. § 1256(a)(1). Therefore, the gain generated from Section 1256 Contracts is gain from a disposition of intangible personal property.

### F.1. Income Sourcing Rules in the USVI.

26 U.S.C. § 7654(e) directs the Secretary of the Treasury Department to prescribe regulations to carry out the provisions of 26 U.S.C. § 932. Under these auspices, in 2008 the Treasury Department issued 26 C.F.R. § 1.937-2, which defines income from sources within the USVI. The general rule is that:

> [T]he principles of sections 861 through 865 and the regulations under those provisions (relating to the determination of the gross and the taxable income from sources within and without the United States) generally will be applied in determining the gross and the taxable income from sources within and without the relevant possession. In the application of such principles, it generally will be sufficient to substitute, where appropriate, the name of the relevant possession for the term "United States," and to substitute, where appropriate, the term "bona fide resident of" followed by the name of the relevant possession for the term "United States resident." Furthermore, the term domestic will be construed to mean created or organized in the relevant possession.

26 C.F.R. § 1.937-2(b).

There are two relevant exceptions to this general rule, however, neither apply in this instance. *First*, income which is from sources within the United States or effectively connected with a United States trade or business cannot be USVI source income. 26 C.F.R. § 1.937-2(c). *Second*, gain from dispositions of property acquired by a *bona fide* resident of the USVI prior to becoming a *bona fide* resident of the USVI is subject to special allocation rules. 26 C.F.R. § 1.937-

2(f). For the reasons set out below, BMHVI's distributive share of Master Fund gains is USVI source income, not United States source income. Because all of BMHVI's distributive share of Master Fund gains is 26 U.S.C. § 1256 income, which is marked-to-market on a yearly basis, no portion of the 2015 gain can be allocable to a disposition of property which was ever owned by a United States resident.

### F.2 Plaintiff's Residence Determines the Source of his Income from the Deemed Sale of Capital Assets.

The general rule for income from dispositions and sales of personal property is that such income is sourced to the residence of the seller. 26 U.S.C. § 865(a). There is no dispute that the Plaintiff is a *bona fide* resident of the USVI, as was such for the entirety of the 2015 tax year. SoF ¶ 2. Plaintiff is the individual responsible for BMHVI's investment advisory for trading activity on behalf of the Master Fund. SoF ¶ 35. 26 U.S.C. § 1256(a)(1) dictates that a Section 1256 Contract is "treated as sold for its fair market value on the last business day of" a given taxable year. Therefore, as December 31, 2015, the Master Fund was treated as a having sold all of its Section 1256 Contracts, which is all of its trading investments. This mark to market income is income from the sale of personal property for sourcing purposes, because 26 U.S.C. § 1256 dictates that such income is "treated" as though the underlying asset was "sold".

The Master Fund owns the Section 1256 Contracts that resulted in the gains reported on Plaintiff's 2015 income tax return to which the RTPark Credit applied. SoF ¶ 33. SCA is the general partner of the Master Fund, and it receives a distributive share of the gain from the Section 1256 Contracts from its incentive allocation. SCA, pursuant to the limited partnership agreement of the Master Fund, is responsible for all of the trading activity of the Master Fund. SCA is a disregarded entity as to BMHVI for income tax purposes. Therefore, SCA's distributive share of the Master Fund's Section 1256 gain is BMHVI's income for income tax purposes. The Plaintiff

controls BMHVI and is responsible for nearly all of SCA's (and therefore BMHVI's) trading activities for the Master Fund.

Because the Plaintiff is ultimately the individual responsible for the sale of these Section 1256 Contracts, and he was a *bona fide* resident for the entirety of the 2015 Tax Year, 26 U.S.C. § 865(a) treats the sales as being sourced to the USVI. Because the Plaintiff's tax home was in the USVI for the entirety of the 2015 Tax Year, no allocation of the gains under 26 C.F.R. § 1.937-2(f) is required.

The Defendants have admitted that the Plaintiff was a *bona fide* resident of the USVI for the entirety of the 2015 Tax Year. SoF ¶ 3. The Plaintiff's residence in 2015 is the sole dispositive fact in determining the source of the Plaintiff's distributive share of the gains from the Section 1256 Contracts. Therefore, there can be no genuine dispute that such gains are USVI source.

## IV.   CONCLUSION

The Plaintiff is entitled to judgment as a matter of law on his First Amended Complaint. As a threshold matter, the Plaintiff is simply owed the income tax refund listed on his unadjusted 2015 Income Tax Return plus interest and attorneys' fees, and the Defendants have admitted as such. To the extent that the Defendants are correct that there is a sourcing error on the Plaintiff's 2015 Income Tax Return (they are incorrect) and that they could make such an adjustment on the Plaintiff's 2015 Income Tax Return (they cannot), the source of BMHVI's income is a partnership item which must first be adjusted on BMHVI's Income Tax Return by the IRS in a TEFRA proceeding, if the income is United States source. Finally, Defendants cannot point to a single fact which would lead this Court to conclude that the Plaintiff's 2015 Income Tax Return is not correct as filed, and the Plaintiff is therefore entitled to a judgment for $5,171,795.00, plus interest and attorneys' fees in respect of that return.

20

Dated: June 7, 2018

Respectfully submitted,

By: /s/ Joseph A. DiRuzzo, III          By:  /s/ Alex Golubitsky
Joseph A. DiRuzzo, III                      Alex Golubitsky
USVI Bar No. 1114                            USVI Bar No. 1269
JOSEPH A. DIRUZZO, III, P.A.           MARJORIE RAWLS ROBERTS, P.C.
633 SE 3rd Ave., Suite 301               PO Box 6347
Ft. Lauderdale, FL 33301                   St. Thomas, VI 00804
954.615.1676 (O)                              206.271.7417 (O)
954.764.7272 (F)                              866.301.2038 (F)
jd@diruzzolaw.com                         alex@mrrpc.net

                                                    Attorneys for Plaintiff
                                                    William O. Perkins, III


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Brief was served upon the following

attorney via a Notice of Electronic Filing generated by the Court's CM/ECF system:

    Ariel Smith, Esq.
    Assistant Attorney General
    Department of Justice
    34-48 Kronprindsen Gade
    GERS Building, 2nd Floor
    St. Thomas VI, 00802

Dated: June 7, 2018                                        /s/ Alex Golubitsky
                                                                      Alex Golubitsky